**Danny PITTMAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 28, 1974.

A. M. Wilhoit, Public Defender, David E. Murrell, Deputy Public Defender, Frankfort, for appellant.

E. W. Hancock, Atty. Gen., James M. Ringo, Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

Danny Pittman, the appellant, a prisoner serving a sentence at the Kentucky State Penitentiary at Eddyville, Kentucky, was scheduled to be released as having completed the sentence on November 30, 1972. On October 26, 1972, he escaped by leaving the prison farm. Two days later he was returned to the prison. Later he was indicted for violation of KRS 432.390 by escaping from a state penitentiary. This statute prescribes a penalty of not less than three nor more than six years' imprisonment. Pittman was convicted of violating the escape statute by a jury which also fixed his punishment at four years' confinement.

Pittman appeals to this court for a reversal of the judgment for a new trial. We reverse and order a new trial because the instructions to the jury were prejudicially erroneous and because relevant evidence proffered by appellant was excluded from the jury's consideration.

Pittman, who was twenty-one at the time he escaped, was completing service of a five-year sentence. He had one month to serve. He admitted the escape but claimed that he was forced to leave because he was in imminent fear of great bodily harm or the loss of his life. He testified that he owed a gambling debt to another prisoner. According to Pittman, four prisoners "cornered him off" in a part of the waiting room of the farm dormitory and demanded the money or that he pay the debt "in trade" by consent to homosexual acts to be there performed on him. There was no guard around, and Pittman claimed he did not believe he could get to a guard for protection in time to avoid serious harm. Pittman stated, "I had no choice. They had me cornered off. They was aiming to kill me."

The proprietor of a store where Pittman was taken when he was recaptured testified that the officer who brought him into the store said that Pittman came out of a fence row complaining of coldness and saying that he wanted to go in. The storekeeper gave Pittman a cup of hot coffee. When the storekeeper asked him why he left prison, Pittman replied, "I had but one choice. Leave, stay there, kill somebody, or get killed."

The evening shift supervisor of the farm dormitory testified that the inmates were free to wander around the 16-acre premises between 3:30 in the afternoon and 15 minutes before dark. This prison official testified that only three guards were assigned to watch "98 to 100 some odd men" in the 16-acre area.

The trial judge sustained an objection to the mention of the fact that Pittman had only one more month to serve at the time he escaped. The evidence concerning this circumstance was the subject of an avowal in the transcript of testimony. The instructions merely told the jury that if they believed beyond a reasonable doubt that Pittman escaped they should find him guilty. The failure to submit Pittman's af-

firmative defense was properly raised under the procedural rules in effect at the time of the trial.

Pittman admitted the escape and undertook to justify it. His defense was a classic example of "confession and avoidance." We discussed the problem in Roy v. Commonwealth, Ky., 500 S.W.2d 921 (1973). Therein it was explicitly recognized that if a prisoner who admits an escape in violation of the subject statute, but presents evidence which tends to establish the existence of "compulsion . . . present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death, or serious bodily harm if the [escape is not made]" the criminal act of escape is excused. *Id.* at 922. We held in *Roy* that the evidence there did not justify an instruction on the affirmative defense of compulsion because the evidence relied on itself showed the absence of any "present imminent danger."

The prosecution argues that Pittman failed "to prove his defense"—he failed to specify the names of the other prisoners involved; therefore, he was not entitled to an instruction on his defense. Although *Roy* points out that the accused there "refused to tell who threatened them" and "had not alerted the prison official to the situation . . . " *Id.* at 922, these matters actually went the credibility of the explanation rather than to the submissibility of the defense by instruction to the jury. The validity and submissibility of the defense must rest on imminent, impending danger to life or great bodily harm based on a well-grounded apprehension. The credibility and probative weight of the evidence introduced of the existence of the elements of the defense are for the jury to assess. Thus, we conclude that Pittman is entitled to an instruction on his affirmative defense so a jury can weigh it and determine its believability.

Having determined that the affirmative defense of compulsion is submissible under the evidence, we feel bound to hold the evidence that Pittman was one month from release from confinement relevant to the issue of Pittman's credibility and admissible on the new trial. Such evidence tends to show that it is probable that Pittman's story of escape because of compulsion and fear is more reliable than would be expectable from a prisoner whose only prospect was for long confinement. This, however, is merely to say that the jury may attach as much or as little significance to the fact as it chooses.

The judgment is reversed for a new trial consistent with this opinion.

All concur.