David Harvey BREWSTER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

June 13, 1978.

Jack E. Farley, Public Defender, Kevin M. McNally, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Mark F. Armstrong, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

This is an appeal from a judgment of the Boyd Circuit Court finding appellant guilty of murder (KRS 507.020), first-degree robbery (KRS 515.020), and two counts of first-degree assault (KRS 508.010). He was sentenced to imprisonment for 60 years on the murder charge, 20 years on the robbery charge, and 20 years each on the two

charges of first-degree assault. The sentences were ordered to run consecutively.

On February 27, 1976, at about 7:30 or 8:00 p. m., the appellant entered the Ashland Foodland grocery, in Ashland, Kentucky, and at the point of a pistol robbed it of an estimated $450 to $500. In the course of the robbery, which lasted less than 15 minutes, the appellant shot and killed Clayton D. Craycraft and shot Robert A. Craycraft and Gene Atkins, without killing either of them. After the shooting the Ashland Police Department, with the assistance of FBI agents, made an extended nationwide search for the appellant. On July 11, 1976, he was arrested by FBI agents in San Diego, California, and thereafter returned to Boyd County, Kentucky, for trial.

The appellant argues nine alleged errors, each of which if found to exist would compel a reversal. We must bear in mind that the appellant sought and was granted a trial to the learned trial judge rather than exercise his constitutional right of having his guilt determined by a jury. This, he has a right to do. *Short v. Commonwealth*, Ky., 519 S.W.2d 828 (1975).

The appellant's sole defense was that of insanity. KRS 504.020(1) provides:

"A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

■ The defense of insanity requires proof of (1) mental disease or defect, and (2) substantial incapacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. The record discloses that there was sufficient medical testimony to at least make an issue on the first requirement, and as to the latter, the record does not reflect any evidence answering in the affirmative. During the course of the trial counsel for the appellant made three attempts to elicit affirmative answers. Each time an objection to the question was sustained by the court. The objections were directed at the

form of the questioning, not at the substance of the answers sought to be elicited. In each instance the question was leading and would technically do violence to CR 43.05. However, where the interrogation such as in the instant case is of a professional person, the strict rule of a leading question need not be observed. Moreover, in the instant case, the trial was to the judge, who would readily look to substance over form. Be that as it may, the court did not cause the appellant's counsel to cease his interrogation. Counsel's efforts toward propounding a question that did not suggest the desired answer were not prohibited, only awaited a properly stated question. The record reflects that after a conference at the bench relative to an objection to the form of the offered, but objected to, question, the trial judge, in sustaining the objection, said, "Proceed with direct examination Mr. Early, sustained." Thereafter, counsel for appellant immediately asked the following question:

"Q–79. Doctor Granikar, we will ignore the question, I'll rephrase the question. Based on your education and experience, observation and evaluation and the history of the patient, do you have an opinion based on reasonable medical certainty as to whether the Defendant suffered from a mental disease or defect on the 27th of February, 1976?"

Appellant's counsel did not make any further effort toward eliciting information relative to whether the appellant, at the time of the commission of the crimes with which he was charged, lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Q–79, supra, was directed at whether the appellant had a mental disease or defect, which had already been established in the affirmative. The question was one of proper procedure. Not having pursued the interrogation, the appellant cannot now complain. The appellant was not denied his constitutional right to be heard or to have his day in court.

■ The appellant further charges that the trial court erred in failing to direct a

verdict of acquittal by reason of insanity. We must continue to bear in mind that the case was tried to the court and not to a jury. The trial judge held that since there was no testimony that the appellant, on the occasion of the murder, robbery and assault, lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, he was not entitled to an acquittal on the grounds of insanity. The trial court did not err in refusing to find the appellant not guilty by reason of insanity.

▮ Next, the appellant contends that the trial court erred by refusing to grant his motion for change of venue or, in the alternative, to summon a jury from another county. The appellant relies exclusively upon the due-process clause of the 14th Amendment to the United States Constitution. However, KRS 452.210 is also relevant to the disposition of this issue. Under either the due-process clause or the applicable statutory guidelines, a change of venue should be granted if it appears that the defendant cannot have a fair trial in the county wherein the prosecution is pending. Specifically, the appellant relies upon the landmark case of *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), in which the United States Supreme Court held that " * * * where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." The decision in *Sheppard* thus requires a showing that (1) there has been prejudicial news coverage, (2) it occurred prior to trial, and (3) the effect of such news coverage is reasonably likely to prevent a fair trial.

▮ In the case at bar, the record shows that counsel for appellant proffered the affidavits of residents of Boyd County, wherein the affiants stated that public opinion concerning the defendant was such as to preclude a fair trial from being had in that county. The Commonwealth submitted countervailing affidavits which refuted this contention. Other exhibits, which also have been made a part of the record, showed that there were several news articles appearing prior to the commencement of the trial concerning the criminal offenses and the subsequent investigation. During a hearing on the motion for a change of venue, counsel for appellant stated that "the defendant simply does not believe that the court could obtain jurors from this county who have not read about, talked about, heard about the case at trial * * *." However, the mere fact that jurors may have heard, talked, or read about a case is not sufficient to sustain a motion for change of venue, absent a showing that there is a reasonable likelihood that the accounts or descriptions of the investigation and judicial proceedings have prejudiced the defendant. A failure to present such a precise claim of prejudice to the trial court is a failure to comply with the criteria outlined by the Supreme Court in *Sheppard*. Of course, a showing of actual prejudice is unnecessary if the procedure involves such a probability that prejudice will result that it is deemed inherently lacking in due process. *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). After reviewing the publicity in this case, we do not believe that such a probability of intrinsic prejudice existed. Prejudice must be shown unless it may be clearly implied in a given case from the totality of the circumstances.

▮ The appellant did assert to the trial court that news coverage of a lawsuit filed by Gene Atkins, who was shot during the commission of the crimes, was prejudicial and denied him his right to a fair trial. This article quotes from the civil complaint filed by Atkins, wherein it is stated that the supermarket was "robbed by David Harvey Brewster while Mr. Atkins was in the store." The newspaper article in question merely quotes from the complaint, and it is clearly stated that the information contained in the article is a series of assertions that had been made by a party to a civil action. This article was not prejudicial to the defendant and, thus, a change of venue was not required.

Concerning the appellant's request to summon jurors from another county, the trial judge did not abuse his discretion by denying this request since he had been presented with arguments that were inadequate to establish prejudice. When the appellant's motions were overruled, he decided to waive his right to a jury trial without first attempting to secure a fair and impartial panel. Thus, no voir dire examination was conducted. Hypothetically, such an examination could have disclosed a jury panel permeated with prejudice, in which event the trial judge would have undoubtedly felt compelled to reconsider the motion for a change of venue or, in the alternative, to impanel a jury from another county. On the other hand, voir dire may have disclosed that the prospective jurors had no prior knowledge of the crime or the defendant's identity. Counsel for appellant certainly was not foreclosed from conducting voir dire before waiving the right to a jury trial. The record does not disclose that there was any infringement upon the defendant's right to a fair trial.

The appellant requested, but did not receive, additional peremptory challenges. RCr 9.40 does not provide for additional peremptory challenges in a case where a single defendant is being tried. After carefully considering the facts and reviewing the record, we believe the actions of the trial judge were altogether proper and certainly do not constitute an abuse of judicial discretion.

Complaint is made that one of the victims was permitted to sit at the table with the Commonwealth's Attorney and that the jailer was permitted to sit at the table with the appellant. The witnesses were caused to be separated as provided by RCr 9.48; however, the Commonwealth's Attorney expressed the need to have Robert A. Craycraft, one of the victims, sit at the table with him so that they could confer from time to time. This, the court permitted over objection by appellant. This practice is neither new nor unusual. It is so well established that there is no need for a citation of authority and, as a matter of fact, it has been the law of this Commonwealth for so long that the mind of man runneth not to the contrary that in a criminal case the trial judge, in his discretion, may allow one witness to remain in the courtroom to aid the Commonwealth's Attorney. The court did not err in permitting Craycraft to sit at the table with the Commonwealth's Attorney.

At the initiation of the proceedings, the jailer of Boyd County was sitting at the defense table with the appellant. Appellant complained of this arrangement, and the court caused the jailer to sit behind the appellant far enough away from him so as not to interfere with communications between the appellant and his counsel, however close enough to him to prevent his escape. The appellant on a prior occasion had escaped from a jail in Cabell County, Florida. The court did not err in exercising this discretion.

The appellant further argues that he has been prejudiced by the failure of the Commonwealth to furnish him with two of the cartridges found at the scene of the shooting. One of the cartridges had been examined at the FBI laboratory and the other had not been examined. Several casings that were recovered from the area where the shooting took place had been tested and were shown to have been fired from the weapon which had been recovered when the appellant was arrested in San Diego. Neither of these two cartridges had been offered in evidence and their existence was not made known until disclosed in the questioning of Captain Earl Borders of the Ashland Police Department. There was no purposeful withholding of the evidence. The most benefit that the appellant could expect to receive from the use of either of these two casings is a failure of the casings to correspond in design with the bullets that had been shot from the subject pistol and into the victims. In *Spencer v. Commonwealth,* Ky., 554 S.W.2d 355 (1977), we said:

"Appellant argues that since he was not furnished this report until the day of

trial, although he had previously requested it through a motion to produce, inspect and copy pursuant to RCr 7.24, the admission of the technician's testimony elaborating on the contents of the report was prejudicial error. We have studied the results of the tests as reported by the technician in his testimony and cannot find the untimely furnishing of this report to appellant's counsel to have so prejudiced his right to a fair trial as to warrant reversal of his conviction. * * "

The eyewitnesses to the shooting and robbery leave no room for doubt that the pistol recovered by the FBI agents fired the bullets that killed Clayton D. Craycraft and wounded Robert A. Craycraft and Gene Atkins.

 Next, appellant alleges that the integrity of some of the Commonwealth's exhibits was not proven. He calls to our attention the casing about which Captain Borders testified. Its integrity was not shown to have been properly protected; consequently, it was not proper that it be introduced into evidence and was not. Hence, it was not prejudicial to the appellant. Chief Mutters of the Ashland Police Department testified that the exhibits filed by him were kept under lock and key in his office. Counsel for appellant complains that other persons may have had a key and for that reason the integrity of the exhibits was not established. Even though other persons in the police department may have had a key to the office where the exhibits were stored, we will not hold that the mere possibility of another person having access to an exhibit will destroy its competency. 24-hour possession is not required. The storage facilities provided by the FBI for its agents is entitled to credibility, and the appellant's challenge to the integrity of the exhibits by reason of them being in the FBI's storage room for three days is without foundation. Exhibits stored in the due course of business in storage facilities provided for that purpose constitutes constructive possession of the agent and their integrity is satisfied.

The appellant vigorously argues that he should have been permitted to interrogate the witness James L. Zopp relative to the basis for his arrest in San Diego. It is the appellant's argument that the correctness of the ruling of the trial court could affect the admission into evidence of the pistol that was recovered subsequent to his arrest. The record reflects several interesting and salient facts, as follows:

1. The San Diego, California, office of the FBI received information that appellant was wanted as a federal fugitive. The information contained the address at which he was living and a description of the vehicle in which he was traveling.

2. The apartment and the automobile were under surveillance from 10:00 a. m. to 2:00 p. m. on July 11, 1976, which was the time and date of appellant's arrest. Appellant knew he was wanted as a fugitive.

3. The pistol was recovered from an automobile registered and licensed in the name of Jackie Corns.

4. Both Brewster and Corns signed written consents to the search of the apartment and the automobile.

5. Appellant was arrested in San Diego, California, as an escaped federal prisoner.

6. Counsel for appellant admits that had this case been tried before a jury an avowal would have been required to preserve for appellate review the alleged error now under consideration.

The automobile in which the gun was found was owned by appellant's traveling companion Ms. Corns. Both she and the appellant had given signed consents to the search of this car. The car was searched on July 12, 1976, without either the appellant or Ms. Corns being present. The signed consent to search was all that was necessary.

 Finally, the appellant claims that KRS 504.020 is unconstitutional since it places the burden of proving a mental disease or defect in exculpation of criminal conduct on the defense. Recently, in *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977), this court carefully considered

this issue. We determined that KRS 504.-020 fell within the limitations imposed upon the Commonwealth by the 14th Amendment to the United States Constitution. We therefore, reject the appellant's contentions and reaffirm our prior holding in *McDonald.*

The judgment is affirmed.

All concur.