**Ronnie DAMRON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

March 21, 1985.

As Corrected March 21, 1985.

ten years; kidnapping a church pianist—ten years; theft over $100—one year.

At the second stage of the trial, he was found guilty of being a persistent felony offender in the first degree and sentenced to twenty-one years' imprisonment.

Damron and four other inmates of the Caldwell County jail overpowered a deputy jailer, tied him with a torn sheet, and fled the premises.

All of the inmates, after leaving the jail, broke into and spent the night in a nearby church. The next day the church pianist arrived at the church for the purpose of practicing. The former inmates overpowered her, tied her to a chair, and taking her car keys, left in her car. Damron was later apprehended in Indiana.

Damron presents four assertions of reversible error.

First, he asked for and was denied a "choice of evils" instruction, KRS 503.030. Damron testified that he escaped from jail because it was a "matter of life or death." He testified that he was ill while in jail, lost weight, and suffered severe chest pains. Further, he testified he had been denied medical attention and felt that "it was serious enough that my life was in jeopardy."

We are of the opinion the situation described by Damron is not sufficient to invoke the provisions of KRS 503.030. There must be a showing of a specific and imminent threat to his person in order to justify the giving of the instruction. See *Senay v. Commonwealth*, Ky., 650 S.W.2d 259 (1983).

Next, Damron argues that he should not have been convicted of being a first-degree persistent felony offender since he was convicted of several felonies, including a conviction for escape from jail, with concurrent sentences. KRS 532.080(4) provides:

For the purpose of determining whether a person has two (2) or more previous felony convictions, two (2) or more convictions of crime for which that person

Michael A. Wright, Asst. Public Advocate, Frankfort, for appellant.

David L. Armstrong, Atty. Gen., William E. Doyle, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Ronnie Damron was convicted by a jury with verdicts as follows: escape in the first degree—five years; kidnapping a jailer—

served concurrent or uninterrupted consecutive terms of imprisonment shall be deemed to be only one conviction, *unless one (1) of the convictions was for an offense committed while that person was imprisoned.* (Emphasis added.)

Damron argues that he was in jail and that is not imprisonment within the meaning of the statute. Thus, he asserts there is proof of only one prior felony which would not subject him to first-degree status.

Simply put, does "imprisonment," as used in the statute, contemplate jail custody while awaiting trial as well as imprisonment in a penitentiary? We are of the opinion escape from jail is encompassed in the statute.

The commentary to KRS 532.080(4) provides:

... When an individual has been convicted two times before serving any time in prison, his convictions shall be considered a single conviction for purposes of this section. This is another effort to avoid the label of persistent felony offender for persons who might be rehabilitated through an ordinary term of imprisonment for the offense most recently committed.

It is plain that the commentary is centered on the defendant being exposed to rehabilitative efforts. We regard the commentary as good advice but not necessarily all inclusive. It is pertinent as far as it goes but does not contemplate the present situation. We hold that escape from jail is an offense committed while that person was imprisoned. It is apparent that the legislature intended to deal more harshly with persons who commit crimes while incarcerated. The present situation fits legislative intent portrayed by KRS 532.080(4).

■ Damron was also convicted of kidnapping in the restraint of the church pianist. The jury was instructed to find Damron guilty of the kidnapping of the pianist if it believed beyond a reasonable doubt that the restraint was to further the commission of theft of the car and escape.

There was not a specific objection to this instruction, only a general objection that there was not sufficient evidence to convict. Although "weak," we give Damron the benefit of the doubt and consider his argument. The proof on the charge of kidnapping the pianist is not different in any respect or degree from the proof of kidnapping of the jailer, not argued here. Certainly this restraint was to accomplish or to advance the commission of a felony (theft of the car), KRS 509.040(1)(b). Damron's argument that "she was being restrained merely to allow the theft to go smoothly without interference" does not take this case out of the operation of the statute.

■ At oral argument, there was an assertion the conviction on this point must be reversed for the reason that the escape had been completed. Without getting into a hair-splitting thesis on when the escape is completed, we hold that a jury issue of the matter was made out here, and there is evidence to sustain the kidnapping conviction under the facts of this case.

We have examined the complaints about the final argument by the Commonwealth and are of the opinion there is no reversible error in this respect.

The judgment is affirmed.

STEPHENS, C.J., and AKER, GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents and files a separate dissenting opinion.

LEIBSON, Justice, dissenting.

Respectfully I dissent. Three different conclusions expressed in the majority opinion are in direct conflict with the statutes in point and our own previous decisions. They are as follows.

## I. THE CHARGE OF KIDNAPPING THE CHURCH PIANIST

The conduct underlying the charge of kidnapping the church pianist consisted of

tying her hands, taking her keys and then taking her car.

KRS 509.050, the "Exemption" section of the kidnapping statute, provides:

"A person may not be convicted of ... kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose."

There is an exception to this "exemption" in KRS 509.050. It "is not applicable to a charge of kidnapping ... incidental to the commission of a criminal escape." *Id.*

The appellant was convicted of two different kidnapping offenses. One stemmed from the restraint of Michael Harper at the jail; the other from the restraint of the church pianist before taking her car. The exception to the exemption to the kidnapping statute applies to the escape from jail, but not to taking the keys and then the car from the church pianist. The Commentary to KRS 509.050 explains:

"The necessity for this provision arises out of the fact that many of the crimes defined in this code have as an essential element, or as an incidental element, a restriction on another's liberty.... Because of this fact, a prosecutor could misuse the kidnapping statute to secure greater punitive sanctions for rape, robbery and other offenses than are otherwise available.

....

... The provision [exemption] seeks to express a policy against the use of kidnapping to impose sanctions upon conduct which involves a movement or confinement (of another person) that has no criminological significance to the evil toward which kidnapping is directed. It then provides a flexible standard by which courts are to enforce that policy. Before criminal behavior that is directed toward the completion of robbery, rape, or some other offense can constitute kidnapping, there must be an interference with liberty in excess of that which ordinarily accompanies that offense."

The Commonwealth argues that it was unnecessary to tie the victim's hands to take her keys and her car, but this view strains the common sense meaning of the words of the exemption statute, "unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose." Such a narrow interpretation would make the exemption statute nonexistent in almost every case, and is not a reasonable interpretation of the statute.

The charge in the indictment relating to kidnapping the church pianist states she was restrained "for the purpose of accomplishing the advancement of the commission of the felony of escape in the first degree." The proof would not support this charge. The appellant and his companions accomplished the escape from jail a day earlier. The instruction to the jury framed this element in terms of whether "the defendant intended to accomplish or advance the commission of the theft of a motor vehicle and escape." "Theft of a motor vehicle" was not covered by the indictment and would be inappropriate because of the exemption statute. "Escape" must be defined in the statutory terms applicable to escape in the first degree, which is confined to escape from "the detention facility in which a person is held (KRS 520.010(5))," and does not include what you do the next day to continue on your journey.

The Commonwealth makes the convoluted argument that the appellant should have requested "an unlawful imprisonment instruction" per KRS 509.030, if he thought the evidence insufficient to convict him of kidnapping the church pianist. This argument shows the weakness, rather than the strength of the Commonwealth's argument.

The appellant asked for a directed verdict for "insufficient evidence," and he was entitled to one.

## II. PREVIOUS CONVICTION FOR PURPOSES OF PFO STATUS

Appellant had three prior 1980 judgments of conviction from Crittenden County, all of which ran concurrently, and two 1980 judgments of conviction from Livingston County, both of which ran concurrently with the Crittenden County judgments. All of the convictions related to crimes occurring in a six week period commencing June 15, 1980.

Appellant argued that he had only one previous conviction for enhancement purposes, citing KRS 532.080(4), which provides that "two (2) or more convictions of crime for which that person served concurrent or uninterrupted consecutive terms of imprisonment shall be deemed to be only one (1) conviction, unless one (1) of the convictions was for an offense committed while that person was imprisoned."

The Commonwealth argued successfully to the trial court that because one of these prior convictions was an escape from jail charge the exception ("while that person was imprisoned") applied.

The only reasonable interpretation of the statute, consistent with the Commentary to the Penal Code and our cases analyzing the PFO statute, is that the phrase, "an offense committed while that person was imprisoned," does not apply to in custody awaiting trial. Imprisonment refers to serving a sentence.

As stated in *Combs v. Commonwealth*, Ky., 652 S.W.2d 859, 861 (1983): .

"The 1974 commentary to the criminal code makes it plain that the intent of the persistent felony offender statute was to restrict its application to persons who have been previously exposed to an institutional rehabilitative effort and that when an individual has been convicted two times before being exposed to the institutional rehabilitation efforts afforded by a term of imprisonment, the two convictions shall count only as one in persistent felony offender proceedings."

The Commonwealth argues that because a person later convicted can be given credit for jail time before conviction, the rule otherwise applicable to "concurrent or uninterrupted consecutive terms of imprisonment" does not apply. This argument may have succeeded with the trial judge, but it certainly runs contrary to the plain meaning of the statute, the Commentary, and the cases interpreting the statute.

## III. PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT

In closing argument over objection the prosecutor argued at length to the effect that the appellant should be found guilty and severely punished to send a message to the jails and prisons as to the consequences of escape, thereby deterring future escapes.

His comments were beyond the scope of the record and the issues before the jury. They included:

"What keeps those people [on 'minimum security'] from walking off all of the time? There are no fences. What keeps them there? They don't want to be charged with escape.

. . . .

... the threat of the law hanging over their head and quick and sure punishment for what they are going to do is more of a deterrent to escaping and taking someone hostage and kidnapping someone than all of the steel and concrete you can pore into this jail over here.

. . . .

So, you sit here in a position today to establish a sentence that will reconstruct the jail, that will reconstruct a jail for a deterrent, . . .

. . . .

I guarantee you that a stiff, heavy penalty for that type crime, this type of crime, once or twice by a Caldwell County jury will do more to make that jail safe and secure than any amount of physical construction."

We should face up to whether or not we permit this type of argument.

Appellant cites a number of cases for the proposition that prosecutors "should not go outside the record" to buttress the reasons for conviction, and suggest punishment other than what is appropriate for the particular crime. e.g., *Baker v. Commonwealth*, 268 Ky. 248, 104 S.W.2d 976 (1937); *Carnes v. Commonwealth*, Ky., 406 S.W.2d 849 (1966). Appellant also cites one case factually in point from another jurisdiction, *People v. Panczko*, 20 Ill.2d 86, 169 N.E.2d 333 (1960). But apparently there is no case squarely in point on the facts from this jurisdiction.

The rule is thus stated in the recent case of *Wallen v. Commonwealth*, Ky., 657 S.W.2d 232, 234 (1983):

"We have not engaged in any blanket condemnation of prosecutorial comment related to deterrence. We have condemned argument only where the prosecutor suggests that the jury convict or punish on grounds or for reasons not reasonably inferred from the evidence."

In this case the prosecution told the jury that he would "guarantee ... that a stiff, heavy penalty ... will do more to make the jail safe and secure than any amount of physical construction." This argument far exceeds our ruling limiting the prosecutor in argument to seeking punishment "on grounds or for reasons [to be] reasonably inferred from the evidence."

This case should be reversed and remanded for a new trial excluding the charge of kidnapping the church pianist and limiting the PFO charge to PFO 2d.