**Joseph MONTGOMERY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**Robert George SHERMAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**Ronnie HUDSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Nos. 89–SC–286–MR, 89–SC–315–MR and 89–SC–316–MR.

Supreme Court of Kentucky.

Oct. 24, 1991.

Rehearing Denied Jan. 16, 1992.

Marie Allison, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellants.

Frederic J. Cowan, Atty. Gen., Robert W. Hensley, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

## OPINION OF THE COURT

Appellants, Sherman, Hudson and Montgomery, were charged and convicted of second-degree escape and being first-degree persistent felony offenders. In all three cases the appellant received an enhanced sentence of 20 years imprisonment. They appeal as a matter of right alleging five errors. We reverse and remand on two of the five.

This case arises out of the circumstances surrounding a highly publicized escape by eight inmates from the Kentucky State Penitentiary ("KSP") on June 16, 1988. The three appellants were apprehended in Kentucky, and were tried together in Lyon Circuit Court where KSP is located. Two other escapees were apprehended and charged with murder in Tennessee; three others apprehended in Texas.

The grounds upon which they seek reversal of their convictions are as follows:

1) Abuse of discretion in denying a change of venue;

2) Abuse of discretion in denying challenges for cause against 16 jurors, five of whom actually sat in judgment in the case;

3) Refusing to instruct on "choice of evils" as an affirmative defense;

4) In proving the persistent felony offender charges incompetent evidence was permitted to establish the dates of commission of prior offenses;

5) The jury failed to fix sentences on the underlying charge, second-degree escape, before finding guilt and fixing an enhanced sentence as persistent felony offenders.

## I. CHANGE OF VENUE

The news media coverage surrounding this highly publicized escape and the on-going steps for apprehension of the escapees in this small, rural county where the prison is a principal industry was massive and pervasive. The voir dire of the jury revealed that *all* of the jurors had been exposed to press coverage. All 29 potential jurors left in the jury pool from which the jury was selected acknowledged they were aware to some extent of news media reports about the case, some were aware of the murders in Tennessee by two of the appellants' confederates, and one juror was aware that there was a "shoot out" when some of the appellants were captured in Central Kentucky.

When the motion for change of venue was heard before the trial, the circuit judge

decided to overrule the motion for change of venue as a preliminary matter, advising he was prepared to reconsider the motion after the matter had been further explored on voir dire. The trial court stated he would "deny the motion with the understanding that [appellants] will be allowed broad discretion to question the jury about what they've read and haven't read." The question here is whether the trial judge abused his discretion when the motion for change of venue was renewed and denied after voir dire had been conducted.

■ We have long adhered to the view that we should respect the trial judge's discretion in deciding whether pretrial publicity requires a change of venue because he is present in the county and presumed to know the situation. *Nickell v. Commonwealth*, Ky., 371 S.W.2d 849 (1963). *Brewster v. Commonwealth*, Ky., 568 S.W.2d 232 (1978), a leading case on the subject, upholds the trial court's decision to deny a change of venue in circumstances similar to the present case, stating "the mere fact that jurors may have heard, talked, or read about a case" does not require a change of venue, "absent a showing that there is a reasonable likelihood that the accounts or descriptions of the investigation and judicial proceedings have prejudiced the defendant.... Prejudice must be shown unless it may be clearly implied in a given case from the totality of the circumstances." *Id.* at 235. *Brewster* also states:

"Of course, a showing of actual prejudice is unnecessary if the procedure involves such a probability that prejudice will result that it is deemed inherently lacking in due process. *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965)."

Viewed from "the totality of the circumstances" (*Brewster, supra*), and given our policy of deferring to the trial judge's discretion in such matters, the majority of this Court does not believe that the present case is one where prejudice is so pervasive it must be "clearly implied." *Brewster, supra*. Thus we hold the trial court did not err in refusing a change of venue.

## II. CHALLENGES FOR CAUSE

■ One of the substantial considerations in affirming the trial court on the "change of venue" issue is the trial judge's decision to permit a broad voir dire of the jury to identify prospective jurors so affected by pretrial publicity that they should be excused for cause. The problem is that this approach carries with it a commitment to excuse such jurors when they have been so identified, and the record before us compels the conclusion the trial court failed in this commitment. Of the jurors who actually sat in the case, at least four, Kenneth Jones, Jerry Riley, James Suitor and William Rogers, answered questions acknowledging not only familiarity with the pretrial publicity surrounding the case, but also that they had formed opinions as to the appellants' guilt. In each instance they asserted they believed they could put aside their preconceived opinions and be impartial, but, perhaps individually, and certainly collectively, these answers fail to meet the standard for a fair and impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 11 of the Kentucky Constitution. Mere agreement to a leading question asking whether the jurors will be able to disregard what they have previously read or heard is not enough to discharge the court's obligation to provide a neutral jury:

"The influence that lurks in an opinion once formed is so persistent that it unconsciously fights detachment from the mental processes of the average man.... No doubt each juror was sincere when he said that he would be fair and impartial to petitioner, but the psychological impact requiring such a declaration before one's fellows is often its father...." *Irvin v. Dowd*, 366 U.S. 717, 728, 81 S.Ct. 1639, 1645, 6 L.Ed.2d 751, 759 (1961). "... the test is 'whether the nature and strength of the opinion formed are such as in law necessarily ... raise the presumption of partiality. The question thus presented is one of mixed law and fact....'" *Id.*, at 723, 81 S.Ct. at 1643, 6 L.Ed.2d at 756.

One of those jurors who stated he had formed an opinion which he could put aside, William Rogers, also stated that he felt fear and concern while the prisoners were out of prison and that such feelings might influence his ability to be fair and impartial.

■ Another juror who sat on appellants' case, Art Joyce, was a former police officer and a present deputy sheriff; and another, Bennie Pinnegar, was the manager of an ambulance service which had a contract with the Ambulance Board for which the prosecutor was the attorney. Juror Pinnegar had been asked, in his role as manager of the Ambulance Board, to participate in the search for these escapees, and had been through the experience of being held hostage in a previous escape.

The trial court refused to strike other jurors challenged for cause, who then were stricken instead by peremptory challenge, including: Thomas Spicer, a former employee of the prison; Ernest Jones, who acknowledged he would give more credibility to law enforcement officers' testimony than other persons, and that he would feel "bad" about acquitting the appellants if the proof was not sufficient to show guilt; Robert Harris, who was being represented by the prosecutor on a legal matter at the time of trial; George Richard, who was an outside patrolman and guard for KSP, and who acknowledged he had spoken with persons in the prison regarding the escape; Faye Pierce, who had two cousins employed at KSP and a close personal friend who was a correctional officer; and Adrian Owen, who acknowledged that the prosecutor was his "cousin's son-in-law."

Jurors Wayne Aldridge, Adrian Owen, Thomas Spicer and Ernest Jones, all acknowledged preconceived opinions regarding appellants' guilt, but they further believed they could be impartial. One of these, Wayne Aldridge, had a son who worked as a correctional officer at KSP, who had been involved in the search for the escapees, and whom he had heard talk about the matter.

In *Marsch v. Commonwealth*, Ky., 743 S.W.2d 830 (1988), we revisit the principle that cases should be reversed on appellate review where the trial court fails to sustain challenges for cause in circumstances in which, even though there is no admission of "actual" bias or prejudice, such may be "implied or reasonably inferred." *Marsch* reviews several different aspects of the problem which also exist here, including: (1) disclaimer of bias from those who have acknowledged they are aware of the pretrial publicity, but answer they can put aside their opinion and be fair, (2) jurors with a family or business relationship with a party, a victim or the prosecuting attorney where the relationship is not so close as to cause automatic disqualification but nevertheless transgresses the concept of a fair and impartial jury, and (4) other circumstances and relationships which create a reasonable inference of prejudice. In *Marsch*, we adopt the following quotation from a Pennsylvania case, *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4, 7 (1981):

"Irrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses."

Quoting from *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985):

"Once that close relationship is established, without regard to protestations of lack of bias, the court should sustain a challenge for cause and excuse the juror."

■ One of the myths arising from the folklore surrounding jury selection is that a juror who has made answers which would otherwise disqualify him by reason of bias or prejudice may be rehabilitated by being asked whether he can put aside his personal knowledge, his views, or those sentiments and opinions he has already, and decide the case instead based solely on the evidence presented in court and the court's instructions. This has come to be referred to in the vernacular as the "magic question." But, as Chief Justice Hughes ob-

served in *United States v. Wood*, 299 U.S. 123, 146, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936), "[i]mpartiality is not a technical conception. It is a state of mind." A trial court's decision whether a juror possessed "this mental attitude of appropriate indifference" must be reviewed in the totality of circumstances. It is not limited to the juror's response to a "magic question." In this case the record is replete with circumstances establishing an inference of bias or prejudice on the part of jurors so pervasive that the jurors were beyond being rehabilitated as appropriate jurors by affirmative answer to such a question, however well intentioned.

■ There is no "magic" in the "magic question." It is just another question where the answer *may* have some bearing on deciding whether a particular juror is disqualified by bias or prejudice, from whatever source, including pretrial publicity. The message from this decision to the trial court is the "magic question" does not provide a device to "rehabilitate" a juror who should be considered disqualified by his personal knowledge or his past experience, or his attitude as expressed on voir dire. We declare the concept of "rehabilitation" is a *misnomer* in the context of choosing qualified jurors and direct trial judges to remove it from their thinking and strike it from their lexicon.

■ It makes no difference that the jurors claimed they could give the defendants a fair trial. As we held in *Pennington v. Commonwealth*, Ky., 316 S.W.2d 221, 224 (1958), "[i]t is the probability of bias or prejudice that is determinative in ruling on a challenge for cause;" and in *Tayloe v. Commonwealth*, Ky., 335 S.W.2d 556, 557 (1960), "the conditions were such that their connections would probably subconsciously affect their decision of the case adversely to the defendants"; and in *Marsch v. Commonwealth, supra,* 743 S.W.2d at 834, "their statements, given in response to leading questions, that they would disregard all previous information, opinions and relationships *should not have been taken at face value.*" [Emphasis added.] *Pennington, Tayloe,* and *Marsch*

stand for the principle that objective bias renders a juror legally partial, despite his claim of impartiality.

The decisions made by the trial court in overruling challenges for cause constituted reversible error.

### III.  "CHOICE OF EVILS" INSTRUCTION

■ At trial the appellants conceded their escape from KSP, and argued, as their sole defense, that they were compelled to do so because they were suspected by fellow inmates of being responsible for assaults committed against two other inmates about two months before the escape took place, and were about to be released from protective custody into the general prison population in circumstances where they would either kill or be killed by friends of these two inmates who were threatening their lives.

In KRS 503.030, the Penal Code recognizes a legal justification for criminal conduct in circumstances "in which individuals are confronted with a choice of engaging in conduct defined as criminal or suffering the consequences of greater injury." Commentary to the Penal Code, KRS 503.030. This principle of justification is designated "choice of evils," and is codified in KRS 503.030(1), providing in pertinent part, as follows:

> "... conduct which would otherwise constitute an offense is justifiable when the defendant believes it to be necessary to avoid an imminent public or private injury greater than the injury which is sought to be prevented by the statute defining the offense charged,...."

There are a wide variety of circumstances where this "choice of evils" principle applies, including escape from custody, but we have affirmed the trial court in refusing such an instruction in at least two recent cases which the Majority of our Court believe to be controlling in the present situation. These two cases are *Senay v. Commonwealth*, Ky., 650 S.W.2d 259 (1983) and *Damron v. Commonwealth*, Ky., 687 S.W.2d 138 (1985).

In *Senay,* the appellant admitted to possession of a handgun by a convicted felon, but sought to "justify this act upon the assertion that one, Jerry Lewis, had threatened his life and that he acquired and retained the hand gun as protection against the danger posed by that threat." 650 S.W.2d at 260. We stated:

> "While we agree that under certain circumstances such defense ['choice of evils'] may be available to one so charged, nevertheless we hold that the defense is not appropriate under the specific facts of this case.
>
> . . . .
>
> . . . the danger presented to the defendant must be compelling and imminent, constituting a set of circumstances which affords him little or no alternative other than the commission of the act which otherwise would be unlawful. The defense does not provide a convicted felon the right to arm himself in anticipation of a shootout." *Id.*

In *Damron, supra* at 139, the appellant "testified that he escaped from jail because it was a 'matter of life or death.' . . . that he was ill while in jail, lost weight, and suffered severe chest pains . . . had been denied medical attention and felt that 'it was serious enough that my life was in jeopardy.'" We held "the situation described by Damron is not sufficient to invoke the provisions of KRS 503.030. There must be a showing of a specific and imminent threat to his person in order to justify the giving of the instruction."

We are aware of our earlier decision in *Pittman v. Commonwealth,* Ky., 512 S.W.2d 488 (1974), holding a defendant was entitled to an instruction on justification where he admitted to escape but claimed he was forced to leave because he was in imminent fear of death or great bodily harm, but a majority of this Court is of the opinion that the appellants' proof is insufficient to establish that injury was so "imminent" as to require the giving of this instruction, believing that our decision here should be controlled by our decisions in *Senay* and *Damron* rather than by our decision in *Pittman.*

## IV. FAILURE TO PROVE THE DATES OF THE COMMISSION OF PRIOR OFFENSES

Specifically, the appellants claim the trial court erred in failing to sustain their motion for directed verdict of acquittal on the charge of being persistent felony offenders, and overruling their objection as to the competency of the evidence adduced to prove one of the essential elements, viz., the dates of commission of prior offenses. The Commonwealth relied on the testimony of KSP's records office supervisor, testifying from the Bureau of Corrections' resident record cards, to prove the dates of the commission of the prior offenses underlying the persistent felony offender charges against the appellants.

In *Hon v. Commonwealth,* Ky., 670 S.W.2d 851 (1984), we reversed a persistent felony offender conviction on failure to prove the appellant was at least 18 years old at the time he committed the previous offenses underlying the persistent felony offender charge, stating there must be strict compliance with proof requirements "[b]ecause the persistent felony statute is so clear in its requirements, and so strictly *penal* in nature, . . . ." *Id.* at 853. [Emphasis original.]

In *Hayes v. Commonwealth,* Ky., 698 S.W.2d 827 (1985), we noted that testimony from the indictments would be a proper method for proving the dates of the commission of prior offenses, and in *Garner v. Commonwealth,* Ky., 645 S.W.2d 705, 707 (1983), we held that the records from the Bureau of Corrections were competent in a persistent felony offender proceedings only as "proof of age and parole status alone." This is because the Bureau of Corrections has no direct or official responsibility in recording or compiling data regarding the underlying conviction, and there is no circumstantial guarantee of trustworthiness accompanying the transmittal and recording of such information at the Bureau of Corrections. On the contrary, the court clerk's file is the official repository of such data.

While we agree the trial court erred in permitting proof of the essential facts regarding the date of commission of prior offenses through the records of the Bureau of Corrections, because there was evidence, albeit incompetent, regarding this element of the charge, the presenting situation is *not* one which requires us to rule, strictly speaking, on the basis of insufficient evidence, and, accordingly, to dismiss the charges. We reverse and remand on this point, requiring only that upon retrial the Commonwealth must sustain the persistent felony offender charges by competent evidence.

## V. FAILING TO REQUIRE THE JURY TO FIX THE SENTENCE OF THE UNDERLYING CHARGE, SECOND–DEGREE ESCAPE BEFORE ENHANCING AS A PFO OFFENDER

The penalty phase was a combined sentencing/enhancement hearing. The instructions allowed the jury to find the appellants guilty as persistent felons and enhance their sentences as such without requiring that the jury first set sentences for the underlying offense. Specifically, the only instruction given at the penalty phase ("Instruction No. 1"), specified the elements necessary to find the appellant guilty as a persistent felon, and then stated:

"If you find the Defendant guilty under this instruction, you will fix his punishment at confinement in the Penitentiary for not less than ten (10) years nor more than twenty (20) years in your *discretion.*

If you do not find the Defendant guilty under this instruction, you will fix his punishment at confinement in the penitentiary for not less than one (1) year nor more than five (5) years, in your *discretion.*" [Emphasis original.]

Thus the thrust of this instruction was to allow the jury to fix a penalty as a persistent felony offender without having first fixed a penalty for the underlying offense, second-degree escape, which carried a range of penalty from one to five years. The instruction was so worded that only in the event the jury did not find appellants guilty of being persistent felons were the jury to set the sentences within the range of penalty provided for the underlying offense. There was no instruction directing the jury to set any sentence on the underlying offense before deliberating a setting a sentence within the range provided on the PFO charge. The jury fixed the maximum penalty, 20 years, within the range provided (ten to twenty years) upon conviction as a PFO offender.

The appellants complain that the procedure used is contrary to the procedure approved in *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987). But the appellants *concede* that defense counsel did not object to the procedure employed. Their position is that the failure to require the jury to set a sentence for the underlying offense violates mandatory ("shall") language in the PFO statute, KRS 532.080, and therefore we should apply "the rule established in *Wellman v. Commonwealth*, Ky., 694 S.W.2d 696, 698 (1985), which provides 'sentencing is jurisdictional ... [and] cannot be waived by failure to object.'" In *Wellman*, the final judgment erroneously provided for consecutive sentences to life imprisonment on each count of a murder/persistent felony offender conviction "contrary to KRS 532.080(1) which provides that the sentence for persistent felony shall be *in lieu* of the sentence for the principal offense." *Id.* at 698. [Emphasis original.] The sole reason for correcting the error despite the absence of contemporaneous objection (i.e., considering the matter "jurisdictional") was because the error resulted in a longer sentence than the law allows. There is nothing to suggest that here the failure to follow the procedure advised in *Reneer* resulted in a longer sentence.

*Reneer* addressed the problem as an abstract proposition, whereas the trial court in the present case was called upon to make a concrete application of the impact of KRS 532.055(3) (Truth-in-Sentencing) on KRS 532.080 (persistent felony offender sentencing). KRS 532.055(1) changes the sentencing structure heretofore by specifying that the jury will no longer fix a penal-

ty for the principal offense in the guilt phase of the trial. This applies in any case, including situations involving consideration of enhancement by reason of persistent felony offender status. KRS 532.055(1) provides:

"In all felony cases, the jury in its initial verdict will make a determination of not guilty, guilty, guilty but mentally ill, or not guilty by virtue of insanity, and no more."

KRS 532.055(3) provides in pertinent part:

"All hearings held pursuant to this section shall be combined with any hearing provided for by KRS 532.080 ["Persistent Felony Offender Sentencing"]...."

The PFO statute, KRS 532.080, provides "the jury, *in lieu of* the sentence of imprisonment assessed, ... shall fix a sentence ... as authorized by subsection (5) or (6) of this section." [Emphasis added.] The American Heritage Dictionary, New College Edition, defines "in lieu of" as "instead of."

Even though the instructions of the trial court in the instance case was different from the *procedure* outlined in *Reneer*, it is at most a procedural matter which was unobjected to at the time of trial and which did not result in an enhancement of the penalty. It is as likely that the failure of the jury to set a sentence on the underlying offense had a mitigating effect, as that it had a punitive effect. The *Wellman* principle does not apply in these circumstances.

The Appellants' Brief takes note of a comment in *Commonwealth v. Hayes*, Ky., 734 S.W.2d 467, 469 (1987): "no doubt because the persistent felony offender statute, KRS 532.080(1), does not authorize an enhanced sentence of imprisonment when there has been no sentence of imprisonment assessed for the underlying offense." *Hayes* is factually distinguishable because the jury imposed only a fine for the underlying offense which it thereafter attempted to enhance with a prison sentence upon conviction as a PFO. The holding in *Hayes* is that only a prison sentence and not a fine can be enhanced under the language of the PFO statute. Thus we were confronted in *Hayes* (as in *Wellman*) with a longer sen-

tence than the law allowed, which is not the case here. The error here, if there was one, was a procedural matter which we need not address in the absence of a contemporaneous objection.

We affirm the trial court on Points I, III and V, and reverse and remand on Points II and IV.

STEPHENS, C.J., and REYNOLDS, J., concur.

LAMBERT, J., concurs, except he concurs in results only on Part IV.

LEIBSON, J., concurs in Parts II, IV and V and in results, but dissents to Parts I and III by separate Opinion.

COMBS, J., concurs in Parts II, III, IV and V and in results, but joins the separate Dissenting Opinion by LEIBSON, J., on Part I.

WINTERSHEIMER, J., dissents by separate opinion, and SPAIN, J., joins in the dissent.

LEIBSON, J., concurring in part/dissenting in part.

I concur in Parts II, IV and V of the Majority Opinion, and in the results, which is to reverse and remand for a new trial.

Respectfully, I dissent from Parts I and III. Part I affirms the decision of the trial court to deny a change of venue, and Part III affirms the decision of the trial court to refuse a "choice of evils" instruction.

### CHANGE OF VENUE

Failing to grant the motion for change of venue was an abuse of discretion, if not initially, then most certainly at the point where it was renewed and it had been established that *all* of the potential jurors were aware, in varying degrees, of the news media accounts of the escape, some were aware of the murders in Tennessee by two of the other escapees, and at least one was aware of the "shoot out" which took place when some of the appellants were recaptured.

Proof of the need for a change of venue was overwhelming and compelling, and es-

sentially uncontradicted except for general denials found in the *pro forma* affidavits submitted by the Commonwealth. Our Court must accept responsibility for recognizing there is some point where a trial court's refusal to grant a change of venue is so fundamentally unfair that such refusal denies the accused his right to a "fair trial" and an "impartial jury" guaranteed to persons accused of a crime by the Sixth Amendment of the United States Constitution and Section 11 of the Kentucky Constitution. The specific language in Section 11 directing the General Assembly to "provide by general law for a change of venue ... to the most convenient county in which a fair trial can be obtained" reinforces this view. These important constitutional rights deserve more from the judiciary than mere lip service.

The constitutional mandate to this Court is to enforce this right, not to inhibit it. The plain fact is these appellants had been tried and convicted by the news coverage before the trial ever began. The local community may demand to try the case, as it is, saturated by news coverage and among people who have by and large prejudged it, but that is all the more reason why the accused is entitled to the protection afforded by the right to a change of venue. I question whether locally elected trial judges, called on to decide this issue of change of venue so vitally important to achieving an impartial jury, faced with pressure from the community to take care of its own, can really be objective in ruling on a change of venue. Most certainly I do not accede to a presumption they are in a better position to be objective about denying a change of venue than is the appellate court. The Majority has cited to the right cases on this subject, *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), and *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), but it has reached the wrong results.

*Brewster v. Commonwealth*, Ky., 568 S.W.2d 232 (1978), cited in the Majority Opinion was a case where the accused felt compelled to forego his right to trial by jury and accede to a bench trial after his change of venue was denied. Yet *Brewster* states:

> "Specifically, the appellant relies upon the landmark case of *Sheppard v. Maxwell*, [citation omitted], in which the United States Supreme Court held that '... where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity.'
>
> [A] showing of actual prejudice is unnecessary if the procedure involves such a probability that prejudice will result [from newspaper 'accounts or descriptions of the investigation'] that it is deemed inherently lacking in due process. *Estes v. Texas*, [citation omitted]." *Id.* at 235.

As we do here, in *Brewster* we recognized the letter of the law but left it a hollow shell. Appellant met the requirements in *Sheppard* by showing (1) there was prejudicial news coverage; (2) it occurred prior to trial; and (3) the effect of such coverage is reasonably likely to prevent a fair trial. *Id.*

This case was tried in a small, rural community where there was a strong probability that many or most prospective jurors would have some connection with this major institution, the maximum security prison, where the offenses were committed. The likelihood that those in the jury pool would be connected in some way with the case, with the events that took place, either directly or indirectly through family and friends, when joined with the pretrial news media coverage, makes the probability of prejudice overpowering. KRS 452.210 mandates that "if it appears that the defendant ... cannot have a fair trial in the county where the prosecution is pending," the trial judge "shall" upon application of the defendant ..., order the trial to be held" elsewhere. It is one thing to say the trial judge has "discretion" in the matter, and quite another to make that discretion unlimited by failing to "call the play" when it is abused. Such unlimited discretion

may satisfy the local community's thirst for vengeance, but it is no substitute for justice.

Recently in my Dissenting Opinion in *Whitler v. Commonwealth*, Ky., 810 S.W.2d 505 (1991), I stated:

> "Certainly, it is much easier to arrange to move cases from one county to another now than it was ... 200 years ago when the right to trial by an 'impartial jury' was guaranteed by our first Kentucky Constitution. If anything, there is more reason now, rather than less reason, to demand trial judges move case from a community where the circumstances of the offense have been widely reported on and discussed. A neutral jury, which is our constitutional guarantee, is one that will decide the case on the evidence presented in open court rather than the knowledge and opinion that the jurors bring in with them to court."

The circumstances in the record before us call for a change of venue, and we should reverse the trial court for refusing it.

## "CHOICE OF EVILS" INSTRUCTION

As stated in the Majority Opinion:

> "At trial the appellants conceded their escape from KSP, and argued, as their sole defense, that they were compelled to do so because they were suspected by fellow inmates of being responsible for assaults committed against two other inmates about two months before the escape took place, and were about to be released from protective custody into the general prison population in circumstances where they would either kill or be killed by friends of these two inmates who were threatening their lives."

The Majority concludes "the appellants' proof is insufficient to establish that injury was so 'imminent' as to require the giving of [a 'choice of evils'] instruction." I disagree.

The appellants established by competent evidence that there were death threats out on each of them as recently as the day preceding their escape, that the nature of the threats was that as soon as they were released from Three Cellhouse back to the general population, they would be killed, and that they had no choice or control over when they would be so released.

The testimony of the appellants present a *prima facie* case satisfying the requirements of KRS 503.030, which provides "an offense [which, of course, includes escape from lawful confinement] is justifiable when the defendant believes it to be necessary to avoid an imminent public or private injury greater than the injury which is sought to be prevented by the statute defining the offense charged."

Our decision in this case should be controlled by *Pittman v. Commonwealth*, Ky., 512 S.W.2d 488 (1974), where we held a defendant entitled to a "choice of evils" instruction as provided for in KRS 503.030 in circumstances substantially identical to the present situation. As here, *Pittman* escaped from the Kentucky State Penitentiary, and admitted his guilt, attempting to justify his conduct in testimony that he was threatened with homosexual assault if he did not repay a gambling debt to another prisoner. We reversed this conviction because the trial court refused to instruct on whether his escape was justified under the circumstances, stating:

> "The validity and submissibility of the defense must rest on imminent, impending danger to life or great bodily harm based on a well-grounded apprehension. The credibility and probative weight of the evidence introduced of the existence of the elements of the defense are for the jury to assess." *Id.* at 490.

The question here was not whether the testimony of the defendants was credible. The Commonwealth argued vehemently that the appellants' failure to turn themselves in proved it was not. But this evidence goes to credibility, whereas it is the appellants' evidence that determines their right to an instruction. Even if it is unlikely the result would have been different, it is the duty of the court "by the instructions to give to the accused the opportunity for the jury to determine the merits of any lawful defense which he has." *Curtis v.*

*Commonwealth,* 169 Ky. 727, 184 S.W. 1105, 1107 (1916); *Brown v. Commonwealth,* Ky., 555 S.W.2d 252, 257 (1977).

Remanding for a new trial while denying the appellants their right to a "choice of evils" instructions is more or less an exercise in futility, because they present no other defense. Accepting that it may have some value because an impartial jury may assess less punishment, nevertheless the appellants must feel they have achieved an empty victory.

COMBS, J., joins the dissenting opinion as to Part I.

WINTERSHEIMER, J., dissenting.

I respectfully dissent from that part of the majority opinion which reverses the conviction because of the decision of the trial judge to overrule challenges for cause because I do not believe the action of the trial judge constituted reversible error.

It is within the sound discretion of the trial judge as to whether a juror should be excused for cause and the decision of the trial judge should not be disturbed unless it is clearly erroneous. *Simmons v. Commonwealth,* Ky., 746 S.W.2d 393 (1988). The trial judge has the best opportunity to determine the capacity of a juror to serve and a reviewing court should not interfere in the absence of an abuse of discretion. Clearly the trial judge always has an advantage by actually viewing the jurors to determine their competency. An examination of the record indicates that there is no reason to disturb the decision of the trial judge here. This Court should not substitute its view of the credibility of jurors for that of the trial judge.

RCr 9.36(1) provides that when there are reasonable grounds to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, the juror shall be excused as not qualified. *See Pennington v. Commonwealth,* Ky., 455 S.W.2d 530 at 532 (1970) where this Court recognized the broad discretion of the trial judge in challenges for cause. Certain language found in *Jones v. Commonwealth,* Ky.App., 737 S.W.2d 466 at 467 (1987) can be instructive in a realistic approach to juror qualifications:

Although jurors sworn to try a case clearly must not communicate with anyone else regarding any subjects connected with the trial, RCr 9.70, members of a jury panel from which the petit jury is chosen, certainly do not live in a vacuum and they cannot be expected always to be devoid of any knowledge of any case upon which they might be selected to sit. Despite the fact that they may have acquaintance with or knowledge about participants or possible testimony in a pending case, prospective jurors can still qualify to sit on the case so long as reasonable grounds exist to believe that they can render a fair and impartial verdict based solely on the evidence adduced.

It is reasonable to fear that an extension of the decision and philosophy expressed in the majority opinion could make it very difficult to ever select a jury to a defendant's satisfaction in a small rural county where an escape occurs from a prison located there. In this case, the trial judge clearly believed the prospective jurors and appropriately determined their credibility. The record does not establish any abuse of discretion that requires reversal of the defendants' conviction. They were not denied their right to a fair and impartial jury. *Scruggs v. Commonwealth,* Ky., 566 S.W.2d 405 (1978); *Tayloe v. Commonwealth,* Ky., 335 S.W.2d 556 (1960).

I would affirm the conviction and remand this matter to the trial court only in regard to the persistent felony offender proceedings.

SPAIN, J., joins in this dissenting opinion.