# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



Supreme Court of Kentucky

2014-SC-000369-MR

O'NEAL DEMETRIUS SWINT          APPELLANT


V.   
ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE ANGELA MCCORMICK BISIG, JUDGE
NO. 12-CR-0003


COMMONWEALTH OF KENTUCKY        APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**


On the evening of December 18, 2011, Anthony Jackson, also known as Anthony Banks, was at the Peppermint Lounge in Louisville, Kentucky. Also present at the lounge that night were Ahmed Mohamed ("Ahmed"), Hadrawie Mohamed ("Hadrawie"), and Qasin Ahmed ("Qasin"). Ahmed had been previously acquainted with Hadrawie and Qasin prior to the night of December 18th. All three men were Somali immigrants. Ahmed and Hadrawie hailed from the same Somali clan and had been associated with each other for several years. Ahmed and Qasin had been friends for nearly eight years.

Jackson approached Ahmed and Qasin and said that he had a friend who was looking for Xanax. The friend to whom he was referring was Appellant, O'Neal Demetrius Swint. Jackson left the lounge and later returned with Appellant. The three Somali men and Appellant departed the lounge

together in a car driven by Hadrawie. Ahmed sat behind Hadrawie, Qasin sat in the front passenger seat, and Appellant sat behind Qasin.

The vehicle eventually stopped at a residential neighborhood in order for Appellant to purchase Xanax. There is some disagreement about how the transaction occurred, specifically who provided the drugs to Appellant, and whether Appellant and Ahmed left the car in order to procure the pills. After completing the transaction, Appellant and the three Somali men drove back toward the Peppermint Lounge.

According to Ahmed's testimony, Appellant purchased fewer pills than Qasin originally anticipated. This irritated Qasin. At some point during the trip, Qasin demanded gas money from Appellant and Appellant refused. Upon further request, Appellant gave Qasin one of the pills he had just purchased. The car eventually stopped at another residential neighborhood prior to arriving at the Peppermint Lounge.

As Appellant was exiting the car, he shot Qasin in the back of the head with a revolver, killing him. Appellant then turned his gun toward Ahmed. Ahmed grabbed Appellant's wrist, but Appellant fired another shot. As the car drove away, Appellant fired additional shots at the vehicle. Hadrawie was shot in the arm.

Appellant fled to his girlfriend Angela Carter's house where Jackson was also present. Carter testified at trial that Appellant had a revolver with him when he arrived. Carter also testified that she overheard a conversation between Appellant and Jackson wherein Appellant admitted that an altercation

2

took place and that he shot the passenger in the head. He also admitted shooting the driver and at the car.

Thereafter, Appellant temporarily resided with a friend, Angela Morgan. Ms. Morgan testified at trial that she heard Appellant speak to someone on the telephone that he needed to dispose of a .38 Smith and Wesson. Jackson died prior to trial and the revolver used during the shooting was never recovered.

The police also received several tips that identified Appellant as the perpetrator. One of the tips came from Angela Carter.

Appellant was eventually apprehended by U.S. Marshals and charged with murder, first-degree assault, and wanton endangerment. A Jefferson Circuit Court jury convicted him on all counts and recommended sentences totaling sixty-three years' imprisonment. The trial court accepted the jury's recommendation and sentenced Appellant accordingly. Appellant now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Five issues are raised and addressed as follows.

## Juror Selection

Appellant argues that the trial court erred by failing to excuse prospective jurors 882883, 1050096, 1019349, and 1084790 for cause, and that reversal of his conviction is required. We disagree.

Defense counsel exercised four peremptory challenges to excuse these prospective jurors. This exhausted all of Appellant's peremptory strikes. Prior to jury selection, defense counsel, verbally and in writing, informed the court that she would have used peremptory strikes on four other prospective jurors,

3

three of whom participated in rendering the verdict in this case. The other juror was later designated as an alternate, but did not participate in rendering the verdict. Thus, Appellant properly preserved this issue. *Sluss v. Commonwealth*, 450 S.W.3d 279, 284-85 (Ky. 2014).

We review the trial court's decision not to strike the four prospective jurors for cause under an abuse of discretion standard. *Id.* at 282. In *Sluss*, we summarized our considerations as follows:

> Kentucky Criminal Rule ("RCr") 9.36 states clearly that 'when there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified.' We must also adhere to the long standing principle 'that objective bias renders a juror *legally partial*, despite his claim of impartiality.' *Montgomery v. Commonwealth*, 819 S.W.2d 713, 718 (Ky.1991) (emphasis added). *Id.*

While questioning the members of the venire panel, Swint's attorney asked the prospective jurors to vote by a show of hands whether Swint was guilty or not guilty. Most raised their hands indicating that they believed Swint was not guilty. No one raised their hand indicating that Swint was guilty. In response to defense counsel's follow-up questioning as to why some jurors did not raise their hands at all, Juror 882883 explained that at the current time, she was "neutral" as to whether Mr. Swint was not guilty or guilty. Jurors 1050096, 1019349, and 1084790 did not indicate that they believed Swint was guilty, but did make statements indicating that there must be some evidence against Swint or a "reason why they were there."

4

Contemporaneous with his contested statements, Juror 1050096, also acknowledged that he was supposed to consider that Swint was innocent. Similarly, Juror 1084790 indicated that the Commonwealth "still needed to prove beyond a reasonable doubt." Jurors 882883 and 1019349 indicated that they could not decide guilt at that time. The trial judge acknowledged these responses when stating her reasons for denying Swint's motion to strike.

The court specifically noted that, in response to follow-up questioning by defense counsel, these jurors "all articulated that a person was innocent until proven guilty, they just didn't feel right voting yet in any way having heard nothing . . . ." We addressed a similar issue in *Tamme v. Commonwealth*, 973 S.W.2d 13, 25 (Ky. 1998). In that case, we affirmed the trial court's denial of a motion to strike a prospective juror for cause who "refused to tell defense counsel how he would vote, because he had not yet heard any evidence, but stated that he would presume Appellant to be innocent." *Id.* at 25. *See also Smith v. Commonwealth*, No. 2002-SC-0988-TG, 2004 WL 102495, at *5 (Ky. Jan. 22, 2004) (affirming trial court's denial of motion to strike prospective juror for cause who stated during voir dire that he could not find the defendant not guilty without first hearing evidence, and that the defendant "is here for some reason.").

Forcing each prospective juror to make an affirmation that the defendant is not guilty stretches the bounds of proper voir dire questioning. As we stated in *Mabe v. Commonwealth*, "[t]he test is not whether a juror agrees with the law when it is presented in the most extreme manner." 884 S.W.2d 668, 671 (Ky.

5

1994). Rather, the question here is "whether, after having heard all of the evidence, the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict." *Id.* Considering that standard and having reviewed the entirety of the jurors' responses to this line of questioning posed by defense counsel, it is clear that there was no error here. Therefore, the court did not abuse its discretion in denying the motion to strike.

## Expert Deposition

Appellant argues that the trial court violated his rights under the Confrontation Clause of the Sixth Amendment when it permitted the Commonwealth to introduce the deposition testimony of Dr. Tracy Corey at trial. Dr. Corey conducted the autopsy of Qasin Ahmed. Although it appears that Appellant did not renew his objection to this evidence at trial, he did object at the pretrial hearing on the Commonwealth's motion to schedule Dr. Corey's deposition. Therefore, this issue is properly preserved.

"[T]he Sixth Amendment prohibits the admission of the testimonial statement of a declarant who does not appear at trial, unless the declarant is unavailable to testify *and* the defendant had a prior opportunity for cross-examination." *Rankins v. Commonwealth*, 237 S.W.3d 128, 130 (Ky. 2007) (citing *Crawford v. Washington*, 541 U.S. 36 (2004)). "[A] witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968).

6

A trial court's decision to order the deposition of a potentially unavailable witness, and whether the trial court properly determined that the witness is "unavailable" for trial, are reviewed under an abuse of discretion standard. *Lovett v. Commonwealth*, 103 S.W.3d 72, 82-84 (Ky. 2003).

It appears Dr. Corey's office received a subpoena requiring her to testify at trial. However, the Commonwealth concedes that Dr. Corey was not formally served with that subpoena. In any event, Dr. Corey was present at a pretrial video deposition that took place in a courtroom setting and was subjected to cross-examination by defense counsel. Although the Commonwealth failed to establish the reasons for Dr. Corey's unavailability at trial, we find no reversible error here because the admission of her deposition testimony at trial was harmless beyond a reasonable doubt. *Parson v. Commonwealth*, 144 S.W.3d 775, 785 (Ky. 2001) (citing *Chapman v. California*, 386 U.S. 18, 22 (1967)).

Appellant's primary contention of error is that "because this deposition occurred one week before trial, all of defense counsel's questions were asked in a vacuum before Hadrawie Mohamed or Ahmed Mohamed—the Commonwealth's two eye witnesses—testified." In support, Appellant contends that Hadrawie and Ahmed's trial testimony was inconsistent with their initial police interviews. Appellant also takes issue with the portions of Dr. Corey's testimony concerning the distance from which the decedent, Qasin, was shot.

However, Appellant fails to describe how defense counsel would have cross-examined Dr. Corey any differently had counsel first heard Hadrawie and

7

Ahmed's trial testimony. Appellant also fails to demonstrate why the distance from which Qasin was shot is relevant to his charges or defense. Moreover, counsel effectively cross-examined Dr. Corey during her prerecorded deposition as follows:

> Defense Counsel: Your basic legal conclusion is Mr. [Qasin] Ahmed died from a gunshot wound to the head. Correct?
>
> Dr. Corey: Yes, there's no doubt on that.
>
> Defense Counsel: That's really the only evidence you—you are submitting. The distance of the gun; who fired it; where he was located—you don't have that information. Correct?
>
> Dr. Corey: Correct.

The fact that Qasin died from a gunshot wound to the head is undisputed. Nevertheless, Appellant also cites to Dr. Corey's testimony wherein she indicated that she *could* have testified concerning the bullets' paths had she been provided the position of the gun or the position of the decedent. Yet, Appellant again fails to describe what specific questions would have been posed to Dr. Corey had counsel first heard Hadrawie and Ahmed's trial testimony, or how any such questions would have been relevant to the Appellant's charges or defense. Thus, any error here in properly securing Dr. Corey as a live trial witness was harmless beyond a reasonable doubt.

### Jail Phone Calls

Appellant further argues that the trial court erred in permitting the Commonwealth to introduce recordings of unauthenticated jail phone calls at trial which included inadmissible hearsay. This issue is not preserved. We will review for palpable error. RCr 10.26.

8

We have defined palpable error as the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). We have also described such errors as those that are "shocking or jurisprudentially intolerable." *Id.* at 4. *See also McCleery v. Commonwealth*, 410 S.W.3d 597, 606 (Ky. 2013) (we will not reverse unless "it can be determined that manifest injustice, i.e., a repugnant and intolerable outcome, resulted from that error.").

The Commonwealth introduced eight recordings of jail phone calls placed by Appellant to five different people. Appellant asserts that these phone calls indicate that Appellant "was attempting to influence witnesses; that he was communicating with people who were attempting to influence witnesses, and that he was speaking with people who carry guns." Appellant also argues that two of these recordings indicated that Appellant had simultaneous romantic interests with multiple women.

Prior to introducing these recordings, the Commonwealth questioned Louisville Metro Police Detective Kristen Downs. Detective Downs stated that she had reviewed the phone calls, that she was able to identify some of the people with whom Appellant was speaking, and that some of the calls were related to the shooting.

KRE 901(b)(5) and (b)(6) provide non-exclusive methods for authenticating telephone conversations. However, "[a]ll that is necessary in authenticating a phone call is that the proponent offer 'sufficient authentication to make a prima facie case that would allow the issue of identity

9

to be decided by the jury.'" Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 7.51[1][d], at 512 (5th ed., 2013) (quoting *First State Bank of Denton v. Maryland Cas. Co.*, 918 F.2d 38, 41 (5th Cir. 1990)). As previously discussed, Detective Downs provided an appropriate foundation for introducing the recordings. Following the playing of each recording, the Commonwealth asked Detective Downs who was the recipient of the call. Each time, she responded with a name. Therefore, this evidence was sufficiently authenticated.

Moreover, it is undisputed that the Appellant made the phone calls. Appellant also fails to indicate any recipient of Appellant's phone calls who was erroneously identified by Detective Downs at trial. Even if the recipients' statements were admitted to prove the truth of the matter asserted, and did not otherwise constitute an exception to the hearsay rule, we cannot conclude that any error here was "shocking or jurisprudentially intolerable." *Martin*, 207 S.W.3d at 4. Therefore, there was no palpable error.

## Impermissible Interpretation

Appellant also alleges that the trial court erred in permitting Detective Downs to interpret a recorded phone call between Appellant and a family member named "Fresh." He objected to the introduction of this testimony at trial and essentially argued that it violated the best evidence rule. KRE 1002. Although the Commonwealth concedes that KRE 1002 required the recording to be introduced, it argues that the error here was harmless. We agree.

10

At trial, Detective Downs read from notes she had prepared concerning the contents of the phone call. Her testimony was brief, consisted of several direct quotes she had transcribed in her notes from the recording, and was subjected to cross-examination by the defense. Critically, Appellant does not cite a specific portion of Detective Downs' testimony that constituted an impermissible or otherwise misleading "interpretation" of the phone call. While it would have been best to have introduced the recording itself at trial, any error here was harmless.

## Reverse Bad Acts Evidence

For his final assignment of error, Appellant claims that the trial court erred in granting the Commonwealth's motion to prohibit defense counsel from informing the jury that Qasin and another man named Yasmani Rivera Amoros were suspects in several armed robberies that were committed weeks before the shooting at issue here. We review the trial court's evidentiary rulings for an abuse of discretion. *Anderson v. Commonwealth*, 231 S.W.3d 117, 120 (Ky. 2007).

Evidence of prior crimes or bad acts must be relevant "for some purpose other than to prove the criminal disposition of the accused . . . ." *Meece v. Commonwealth*, 348 S.W.3d 627, 662 (Ky. 2011). When offered by the defendant, this type of evidence is referred to as "reverse 404(b) evidence." *Montgomery v. Commonwealth*, 320 S.W.3d 28, 46 (Ky. 2010). Evidence admissible under KRE 404(b) must also be relevant, probative, and not unduly prejudicial. *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994).

11

Appellant told detectives during his interview that on the night of the shooting, a dark skinned man approached the car in which he and the three Somali men were traveling. According to Appellant, this perpetrator attempted to enter the car and pulled out a revolver. Appellant claimed that he grabbed the man's gun, a struggle ensued, and shots were fired inside the vehicle. Appellant also claimed that shots were fired at him as he was fleeing the car. A recording of this interview was played for the jury.

Yasmani Rivera Amoros was identified as a gunman in several unrelated armed robberies that occurred on December 5, 2011. Appellant argues that Amoros matches the description of the fifth man allegedly involved in the shooting that occurred in the present case. Qasin was also suspected of being a passenger in a vehicle that was involved in the December 5th robberies. Appellant claims that it was error to deny introduction of evidence identifying Amoros' and Qasin's involvement in those robberies. He specifically argues that this evidence was "relevant to [Appellant's] defense that the people inside the vehicle attempted to rob him and it demonstrated that the police investigated other individuals as the possible fifth person to enter the car that night."

Assuming that this purported bad acts evidence concerning Qasin is relevant, it cannot be considered probative. Evidence is probative if "the jury could reasonably infer that the prior bad acts occurred and that [the individual] committed such acts." *Parker v. Commonwealth*, 952 S.W.2d 209, 214 (Ky. 1997); *see also Davis v. Commonwealth*, 147 S.W.3d 709, 724-25 (Ky.

12

2004). Upon further investigation of this matter, Detective Downs was informed by the detective investigating the December 5th robberies that he "had no knowledge that Qasin B. Ahmed played an active role in the robberies." The detective also stated that neither Hadrawie nor Ahmed's names came up during his investigation. Therefore, the evidence concerning Qasin's active involvement in the December 5th robberies has little, if any, probative value.

Appellant's allegations identifying Amoros as the "fifth man" involved in the shooting at issue here were not presented to the trial court. In any event, Amoros' connection to the present case is premised primarily upon his alleged association with Qasin during the December 5th robberies. Based on this tenuous connection, and having concluded that the evidence concerning Qasin's involvement in the December 5th robberies was not probative, any evidence of Amoros' involvement in the December 5th robberies is irrelevant here. Therefore, the trial court did not abuse its discretion in refusing to allow the introduction of this reverse bad acts evidence at trial.

## Conclusion

For the foregoing reasons, we hereby affirm the judgment of the Jefferson Circuit Court.

Minton, C.J.; Abramson, Cunningham, Keller, Noble, and Venters, JJ., sitting. Minton, C.J.; Cunningham, Keller, Noble, and Venters, JJ., concur. Abramson, J., concurs in result only. Wright, J., not sitting.

COUNSEL FOR APPELLANT:

Daniel T. Goyette
Louisville Metro Public Defender

Joshua Michael Reho
Assistant Appellate Public Defender


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

James Daryl Havey
Assistant Attorney General