# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 16, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000197-MR

RICARDO D. TAYLOR                                                    APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.                      HONORABLE MITCH PERRY, JUDGE
NO. 12-CR-002381

COMMONWEALTH OF KENTUCKY                                              APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

In August 2012, Appellant, Ricardo D. Taylor, had been dating Tina Norman for nearly one month. The two had also been living together at Tina's apartment. Around noon on August 2, 2012, while at Tina's apartment, Taylor began questioning her about cheating on him with another man. Tina, who was high at the time, laughed in response and Taylor became very angry. He threw a can of soda at her and then physically assaulted her. Tina broke up with Taylor and also told him to move out and to leave the key to her apartment with a neighbor. She gathered her two children and took them to another location.

Tina testified that when she returned to the apartment later that afternoon, Taylor was still there. He gave her the apartment key, and left.

Taylor returned to the apartment complex at around 11 p.m. that evening. Tina testified that she witnessed Taylor arrive while she was walking to a friend's apartment that was located in the same complex. Two of Tina's friends, Cheryl Bagwell and Tela Harvey, were in Tina's apartment at that time. While leaving her other friend's apartment, Tina observed Taylor robbing a child at gunpoint. She then called the police from her friend's house.

While Ms. Bagwell was stepping out of Tina's apartment to smoke, she was confronted by Taylor who told her to go into the apartment. He pulled out a gun and demanded that she tell him where Tina was. He also attempted to telephone Tina and demanded that Ms. Bagwell do the same. Taylor threatened to kill Ms. Bagwell and Ms. Harvey if they did not find Tina. At some point, he fired his gun into the floor of the apartment.

While holding the two women at gunpoint inside the apartment, Taylor opened the apartment door and lured a boy named Osman Omar into the apartment. The victims were seated on a couch for about 25 minutes while being held at gunpoint. Upon hearing the police arrive at the scene, Taylor became upset and demanded to know who called them. Taylor then shot Osman twice, Ms. Bagwell once, and Ms. Harvey twice. Ms. Bagwell survived, but Osman and Ms. Harvey were killed.

The Louisville Metro SWAT team was called to the scene. The officers shot "CS" gas into the apartment, breached the door, and detained Taylor. Taylor was then arrested and subsequently indicted. Prior to trial, the court

determined that Taylor was intellectually disabled and, therefore, ineligible for the death penalty.

A Jefferson Circuit Court jury convicted Taylor on two counts of murder and two counts of capital kidnapping. For each, they sentenced Taylor to life imprisonment without the possibility of parole for a period of 25 years. The jury recommended that the two murder sentences be served consecutively but concurrently with the kidnapping convictions. The jury also convicted Taylor of one count of first-degree unlawful imprisonment, one count of tampering with physical evidence, and one count of first-degree possession of a controlled substance while in possession of a firearm.

After the jury sentenced Taylor on the murder and kidnapping convictions, Taylor pled guilty to being a first-degree persistent felony offender ("PFO"). The Commonwealth agreed to recommend the minimum sentence on the remaining convictions, which was ten years' imprisonment for each, including the first-degree PFO enhancements. The Commonwealth further recommended that all sentences run concurrently with the two murder sentences of life imprisonment without the possibility of parole for a period of 25 years. The trial court accepted this recommendation. Taylor now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Three issues are raised and addressed as follows.

**Kidnapping Exemption**

For his first argument, Taylor asserts that the trial court failed to instruct the jury on the kidnapping exemption statute. KRS 509.050. This

3

issue was properly preserved by defense counsel's oral motion and tendered instruction. The kidnapping exemption enumerated in KRS 509.050 provides:

> A person may not be convicted of unlawful imprisonment in the first degree, unlawful imprisonment in the second degree, or kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose.

Taylor argues that application of the kidnapping exemption is a jury issue, not an issue of law for the court. In support, Taylor cites case law discussing other defenses, Amendments 6 and 14 of the U.S. Constitution, and Sections 7 and 11 of the Kentucky Constitution. In *Calloway v. Commonwealth*, however, we held that the application of the kidnapping exemption is to be determined by the trial court and not by the jury. 550 S.W.2d 501, 503 (Ky. 1977). Taylor also contends that the kidnapping exemption is an affirmative defense, not an exculpation defense. The primary distinction is that the former requires the Commonwealth to bear the burden of proof to negate the offense, while the latter places the burden on the defendant. *LaPradd v. Commonwealth*, 334 S.W.3d 88, 90 (Ky. 2011) (citation omitted).

However, it appears that Taylor failed to raise these arguments before the trial court. Therefore, we need not address Taylor's new claims on appeal— that the exemption is an affirmative defense and that the application of the kidnapping exemption must be determined by the jury, not the trial court. Even if we were inclined to reconsider *Calloway*, this is not the case to do it

4

because the facts are simply not there. And although Taylor has failed to challenge the trial court's determination as a matter of law that the kidnapping exemption did not apply, we find no error here.

## Expert Evidence

Taylor argues that the trial court abused its discretion in ruling on the admissibility of evidence elicited during the testimony of defense expert, Dr. John Fabian. Dr. Fabian testified that Taylor suffered from Post-Traumatic Stress Disorder ("PTSD"), Attention Deficit Hyperactivity Disorder ("ADHD"), and that he was intellectually disabled. Taylor's argument here is twofold.

First, he argues that the court erred in permitting the Commonwealth to elicit during cross-examination that, in reaching his diagnosis, Dr. Fabian considered a 2006 incident in which Taylor was shot and severely wounded by police officers after Taylor shot at them first. Taylor specifically argues that this is inadmissible evidence of prior crimes or bad acts. Evidence of prior crimes or bad acts must be relevant "for some purpose other than to prove the criminal disposition of the accused . . . ." *Meece v. Commonwealth*, 348 S.W.3d 627, 662 (Ky. 2011). Evidence admissible under KRE 404(b) must also be relevant, probative, and not unduly prejudicial. *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994). *See also* KRE 401; 402; and 403.

We agree with the Commonwealth that this evidence was admitted for some purpose other than to prove the criminal disposition of the accused. Most notably, under KRE 703, the Commonwealth is permitted to fully explore, on cross examination of the expert, his diagnosis of PTSD. That includes

5

whether the 2006 incident may have exacerbated Taylor's PTSD. *See Foster v. Commonwealth*, 827 S.W.2d 670, 678–79 (Ky.1991) (quoting 31 Am.Jur.2d *Expert and Opinion Evidence* § 92) ("[t]he data on which expert witnesses rest their specific opinions, as distinguished from the knowledge which qualifies them to offer opinions at all, may be fully inquired into on cross-examination." *See also Sluss v. Commonwealth*, 450 S.W.3d 279, 289 (Ky. 2014) (affirming the trial court's decision to permit the Commonwealth to discuss defendant's medical records at trial where the records were introduced as a part of defense strategy.).

Taylor concedes that this evidence was relevant and probative. Rather, he submits that the crux of the trial court's error here was whether the probative value of the 2006 incident was substantially outweighed by the prejudice that occurred from its introduction.

The record indicates that the court limited the prejudicial impact that Dr. Fabian's testimony may have had on the jury. For example, the court limited the Commonwealth to inquiring into whether Dr. Fabian considered the 2006 incident in his evaluation. Prior to the testimony, Taylor's counsel informed the court that he had discussed the court's ruling on this issue with Taylor, and that Taylor insisted that *his* counsel question Dr. Fabian regarding the 2006 shooting. The court also prevented the Commonwealth from eliciting any evidence that Taylor was criminally charged as a result of the 2006 incident. At the conclusion of Dr. Fabian's testimony, the court admonished the jury to consider that testimony only for the purpose of evaluating the validity and

6

probative value of his opinion, and for no other purpose. Therefore, the alleged prejudice here does not outweigh the probative value of Dr. Fabian's contested testimony. As such, the trial court did not abuse its discretion in permitting the introduction of this evidence.

Second, Taylor also argues that the trial court abused its discretion in precluding Dr. Fabian from testifying at length concerning Taylor's intelligence quotient ("IQ"). During direct examination of Dr. Fabian, defense counsel elicited that Taylor was intellectually disabled based on an IQ examination. On cross-examination, the Commonwealth elicited testimony that Taylor scored a 91 on an IQ examination that was administered in 2014. That score is within the average range. Defense counsel then attempted to elicit additional testimony concerning other tests that placed Taylor's IQ below 91. The court precluded either party from presenting additional evidence of Taylor's IQ. The court reasoned that while such evidence was relevant for the sentencing phase of trial, it was not relevant for the guilt phase.

Taylor's primary contention here is that additional IQ evidence was relevant to his extreme emotional disturbance ("EED") defense. More precisely, a person is not guilty of intentional murder if:

> he acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. KRS 507.020(1)(a).

Taylor therefore argues that his IQ is relevant to the "circumstances" through which he views the world. While Taylor's IQ may have had some relevance

7

here, it is worth reiterating that Dr. Fabian testified at length concerning all of Taylor's psychological and cognitive deficiencies, including Taylor's PTSD, ADHD, *and* his intellectual disability. The trial court's limitation on the introduction of additional evidence demonstrating the range of Taylor's IQ scores is well-founded. A defendant's IQ scores are typically relevant, if at all, either before trial or at the sentencing stage of trial. Although sometimes relevant during the guilt stage, excessive testimony concerning numerous IQ assessments and corresponding scores is unnecessary, cumulative, and may confuse the jury when determining the issue before it, i.e., guilt. Therefore, we cannot say that the trial court abused its discretion here by precluding the introduction of additional IQ evidence.

## Handgun Evidence

Finally, Taylor argues that the trial court erred in permitting the Commonwealth to present evidence of a handgun and ammunition that was discovered in Taylor's car. The Commonwealth elicited testimony from a Louisville Metro Police Detective that a .45 caliber hand gun and significant quantity of ammunition were discovered in Taylor's vehicle, which was located at the apartment complex. Taylor claims that this evidence was irrelevant to the crimes for which Taylor was convicted.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. This test requires "only a slight increase in probability . . . ." *Harris v. Commonwealth,*

8

134 S.W.3d 603, 607 (Ky. 2004). Evidence that is not relevant is not admissible. KRE 402. As previously discussed, a trial court's determination with respect to relevancy of evidence is reviewed under an abuse of discretion standard. *Love v. Commonwealth*, 55 S.W.3d 816, 822 (Ky. 2001).

In *Harris v. Commonwealth*, we made clear that "weapons which are not used in the commission of the crime are not admissible." 384 S.W.3d 117, 124 (Ky. 2012). It is undisputed that the .45 caliber handgun and ammunition discovered in Taylor's car were not used during the commission of the crimes for which he was convicted. In *Harris*, however, one of the inadmissible guns was recovered at Harris' home, four days after the murder for which *Harris* was charged and convicted. *Id.* at 121. The other inadmissible weapon was located in the Cincinnati Police Department property room. *Id.* at 122. Here, Taylor's weapons were discovered in his car at the crime scene. The Commonwealth argues that this evidence is relevant to the issue of intent and EED.

In contrast, Taylor argues that a person acting under EED has acted intentionally and, thus, the handgun and ammunition discovered in Taylor's car is irrelevant to this issue of intent or EED. Rather, Taylor cites that a proper EED analysis requires a "specific and identifiable triggering event" that is "sudden and uninterrupted." *Holland v. Commonwealth*, 466 S.W.3d 493, 504 (Ky. 2015) (citations omitted). Contrary to Taylor's assertion, the Commonwealth must nevertheless prove intent in order to convict Taylor of the two murder charges for which he was indicted and tried. Therefore, the fact that Taylor arrived at the crime scene with multiple weapons and additional

ammunition is at least somewhat relevant to his state of mind and preparation leading up to the crimes in order to prove murder. Whether EED negates this intent is a separate issue.

In any event, we ultimately held in *Harris* that, while the trial court abused its discretion, the judgment was not substantially swayed by the admission of the contested evidence and was, therefore, harmless. *Harris*, 384 S.W.3d at 125. RCr 9.24. Similarly, any error that occurred in the present case is harmless and does not require reversal. For example, the Commonwealth did not reference that weapon or ammunition any further during their case in chief or in closing argument. Also, the Commonwealth presented significant evidence in support of its case, including victim testimony.

## Conclusion

For the foregoing reasons, we hereby affirm the judgment of the Jefferson Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Daniel T. Goyette
Joshua Michael Reho
Office of the Louisville Metro Public Defender


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Taylor Allen Payne
Assistant Attorney General